1  Jeffrey R. Krinsk, Esq.  (CA Bar No. 109234)
   jrk@classactionlaw.com
2  Trenton R. Kashima, Esq. (CA Bar No. 291405)
   trk@classactionlaw.com
3  FINKELSTEIN & KRINSK LLP
   550 West C Street, Suite 1760
4  San Diego, California 92101
   Telephone: (619) 238-1333
5  Facsimile: (619) 238-5425

6  [Additional Counsel on Signature Page]

7  *Attorneys for Plaintiffs*
   *and the putative Class*

8
                    **UNITED STATES DISTRICT COURT**
9
                  **NORTHERN DISTRICT OF CALIFORNIA**
10

11 **ANNA SALDIVAR**, individually and on behalf    Case No.
   of all others similarly situated,
12                                                   **CLASS ACTION COMPLAINT FOR:**
            Plaintiff,
13                                                   **(1) VIOLATION OF CAL. BUS. &
                  v.                                     PROF. CODE § 17200, *et seq.*;**
14
   **THE COOKWARE COMPANY (USA) LLC**,              **(2) VIOLATION OF CAL. BUS. &
15 a Delaware Company,                                   PROF. CODE § 17500, *et seq.*;**

16          Defendant.                               **(3) VIOLATION OF CAL. CIV. CODE
                                                         §§ 1750, *et seq.*; and**
17
                                                     **(4) BREACH OF WARRANTY**
18
                                                     **JURY TRIAL DEMANDED**
19

20

21

22

23

24

25

26

27

28

1         Plaintiff ANNA SALDIVAR ("Saldivar" or "Plaintiff"), individually and on behalf of the

2   other members of the below-defined Class she seeks to represent (collectively, the "Class" or "Class

3   members"), hereby alleges against Defendant THE COOKWARE COMPANY (USA), LLC d/b/a

4   GreenPan ("GreenPan" or "Defendant"), upon personal knowledge, and as to all other matters upon

5   information and belief, based upon the investigation made by the undersigned attorneys, as follows:

6                           **I.       NATURE OF THE CASE**

7         1.     Plaintiff brings this class action lawsuit seeking damages and equitable relief on her

8   own behalf and on behalf of members of the Class, each of whom purchased one or more nonstick

9   cookware products ("Products") manufactured and/or marketed by GreenPan.

10         2.     GreenPan makes several types of nonstick cookware Products which are coated with

11   its patented "Thermolon™" ceramic non-stick coating. GreenPan's Products are widely available

12   and sold at brick-and-mortar and online retailers such as Amazon.com, WalMart, Target, Williams

13   Sonoma, Sur La Table, and Bed Bath & Beyond.

14         3.     On the packaging attached to its nonstick Products, GreenPan advertises that its

15   nonstick Products—made primarily of metal with a "Thermolon™" coating—are "COMPLETELY

16   TOXIN FREE," "HEALTHY CERAMIC NON-STICK," and contain "No PFOA, PFAS, Lead or

17   Cadmium."

18         4.     On its website, www.greenpan.us, GreenPan advertises that its nonstick pans contain

19   "0% Toxins," are "Good for the environment" and are "reinforced . . . with diamonds." *See*

20   GreenPan, www.greenpan.us (last visited Sept. 23, 2019); *Why Ceramic*, GreenPan,

21   www.greenpan.us/why-ceramic (last visited Sept. 23, 2019); *Why GreenPan*, GreenPan,

22   https://www.greenpan.us/WHY-GREENPAN (last visited Sept. 23, 2019).  GreenPan further claims

23   on its website that GreenPans are a "green" product because "60% less CO2 is emitted during the

24   curing phase of production of Thermolon coatings." *Id.*

25         5.     GreenPan Products are not, in fact, "COMPLETELY TOXIN FREE!", but contain

26   compounds that are known to be toxic. Upon information and belief, the patent for "Thermolon™"

27   coating, which is applied to every GreenPan Product, contains several known toxins.

28         6.     GreenPan's Products are not "HEALTHY CERAMIC NON-STICK" because

GreenPan's Products, in and of themselves, do not make the food prepared any "healthier" (i.e., lower in fat, or higher in nutrients) than food prepared with other pans.  The absence of toxins (as falsely claimed by GreenPan) does not make a product inherently "healthy," and further, the presence of toxins contained in GreenPan's Products in itself renders GreenPan's health claims false.

7.     GreenPan's Products are not superior to other similar products simply because they do not contain PFOA, PFAs, lead, or cadmium. In fact, cookware containing PFOA and PFAs have largely been phased out of the cookware market in the United States. GreenPan's marketing of its GreenPan Products as superior simply because they do not contain compounds that other cookware does not contain is false and/or misleading.

8.     GreenPan's Products are not "good for the environment" solely because GreenPan's manufacturing process creates a lower amount of harmful gasses than GreenPan's competitors. GreenPan's Products are not "reinforced . . . with diamonds," nor do they contain material amounts of diamonds or diamond fragments.

9.     GreenPan markets its Products to the health-conscious consumer. GreenPan's consumer cares about the consumer's health and the health of the consumer's family. As a result, the GreenPan consumer pays a premium for GreenPan's nonstick Product; in fact, GreenPan's Products sell for an approximate 50% to 400% higher price than other nonstick cookware.

10.     Each of GreenPan's claims related to the lack of toxins in its Products, the health benefits of its Products, the beneficial impact of its Products on the environment, the implication that GreenPan's competitors' products contain PFOA, PFAs, lead, or cadmium, and the use of diamonds in GreenPan's Products deceived, confused, or misled the public as to the nature and/or value of GreenPan's Products.

11.     Because of these false and/or misleading claims, Plaintiff and members of the Class paid more for their GreenPan Product than they would have paid in absence of the false and/or misleading claims.

## II.     JURISDICTION AND VENUE

12.     This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiff and the Class

- 2 -

1    are citizens of a state other than that of the Defendant.

2        13.    This Court has personal jurisdiction over Defendant because Plaintiff purchased her

3    GreenPan Product in the State of California, Defendant's Products are advertised, marketed,

4    distributed, and sold throughout the State of California; Defendant engaged in the wrongdoing

5    alleged in this Complaint in the State of California; Defendant is authorized to do business within

6    the State of California; and Defendant has sufficient minimum contacts with California and/or

7    otherwise has intentionally availed itself of the markets of California, rendering the exercise of

8    jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

9        14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial

10   part of the events or omissions giving rise to these claims occurred in this District, the Defendant has

11   caused harm to Class Members residing in this District, and the Plaintiff is a resident of this District.

12                                    **III.    PARTIES**

13   **A.    Plaintiff**

14       15.    Plaintiff Anna Saldivar is a resident of the City of Greenfield, County of Monterey,

15   California. Plaintiff purchased her GreenPan Products new in 2017 and chose to purchase her

16   GreenPan Products based on GreenPan's website advertising and Product packaging.

17   **B.    Defendant**

18       16.    Defendant, The Cookware Company (USA) LLC, d/b/a the Original GreenPan

19   ("GreenPan"), is a Delaware Company with its principal place of business located at 660 White

20   Plains Road, Suite 550, Tarrytown, New York 10591.

21       17.    The Cookware Company (USA) LLC is the United States arm and subsidiary of The

22   Cookware Company located in Belgium. The Cookware Company has "major offices" in Jiangmen,

23   Tokyo, London, and Hong Kong.

24       18.    Defendant manufacturers over fifty types of nonstick pots and pans which are all

25   equipped with its patented "Thermolon™" nonstick coating, which it boasts as "100% TOXIN

26   FREE!" and "HEALTHY CERAMIC NON-STICK."

27

28

CLASS ACTION COMPLAINT                    Case No:

1

2

### IV.    FACTUAL ALLEGATIONS

**A.    Ban of PFOAs aand PFAs Resulting from Teflon Controversy**

3      19.    In approximately 1951, DuPont de Nemours, Inc. ("DuPont") began manufacturing

4   Teflon, a chemical mixture used to make, among other things, non-stick coating for cookware

5   products. The production of Teflon required the use of a class of chemicals known as C-8

6   perfluoroalkyls (PFAs), the most well-known of which is perfluorooctanoic acid (PFOA). When

7   Teflon was first introduced it was widely believed to be safe.

8      20.    In 1998, West Virginia farmer Wilbur Tennant sued DuPont alleging that DuPont's

9   Parkersburg, West Virginia manufacturing plant poisoned the water supply in Parkersburg, resulting

10  in the death of over 150 cattle owned by Tennant. The lawsuit was settled in 2001.

11     21.    In 2001 a class action complaint on behalf of approximately 80,000 individuals living

12  near DuPont's West Virginia manufacturing plant again was filed against DuPont seeking damages

13  for injuries sustained on behalf of residents of as a result of DuPont's chemical pollution. The class

14  action was settled in 2005. Between 2015 and 2017, over 3,550 additional PFOA-related lawsuits

15  were filed and settled.

16     22.    As of 2013, Teflon ceased using PFAs in the production of Teflon. Based on

17  information and belief, no nonstick cookware sold in the United States since 2013 has been produced

18  using PFAs or PFOA.

19     23.    Studies conducted after the filing of the lawsuits revealed that C-8 PFA exposure is

20  positively related to a number of diseases and cancers.

21     24.    Additionally, studies showed that when Teflon was heated to temperatures above 662

22  degrees Fahrenheit, the PFA chemicals begin to degrade and can release toxic fumes.

23     25.    The health concerns surrounding PFAS were widely reported. Due to these concerns,

24  a global market for chemical-free cookware was created.

25  **B.    Introduction of GreenPan**

26     26.    According to GreenPan's website, GreenPan founders Jan Helskins and Wim De

27  Veirman "discovered" that "traditional non-stick pans released toxins when overheated and used

28

PFOA during the manufacture of the coating."[1] Based on these findings, GreenPan's founders established a goal to create a new alternative.[2]

27.    Around 2007 GreenPan "introduced the world to ceramic nonstick cookware" which was made possible by "Thermolon™," a ceramic non-stick coating.[3] GreenPan's cookware, equipped with its patented "Thermolon™" coating, is now sold worldwide.

28.    GreenPan's Product packaging currently claims that its Products are "HEALTHY CERAMIC NON-STICK," "COMPLETELY TOXIN FREE," "good for the environment," "reinforced . . . with diamonds," and contain "No PFOA, PFAS, Lead or Cadmium."

29.    Thermolon™'s safety has yet to be conclusively established.

**C.    GreenPan Admonished for Over-the-Top Advertising**

30.    The National Advertising Division of the Council of Better Business Bureaus, Inc. (NAD) "monitors national advertising in all media, enforcing high standards of truth and accuracy."[4] The NAD complaint and review process for challenging a competitor's claims "is designed to encourage truthful advertising by providing a forum for the relatively quick resolution of disputes."[5]

31.    Around 2012, NAD launched an inquiry into claims made by GreenPan in an advertisement which compared GreenPan's nonstick Products to one of its' competitors' nonstick cookware products.

32.    Ultimately, NAD recommended that GreenPan take significant action concerning its claims, including, but not limited to:

- "[D]iscontinue its PFOA-free claims or modify them to avoid conveying the unsupported message that all PTFE non-stick coatings are made with PFOA";

- "[D]iscontinue its PTFE-free claims or modify them to avoid conveying the unsupported message that its Thermolon coated products are better for the

---

[1] *Why GreenPan*?, GreenPan, https://www.greenpan.us/WHY-GREENPAN (last visited Sept. 23, 2019).
[2] *Id.*
[3] GreenPan, https://www.greenpan.us/ (last visited Sept. 23, 2019).
[4] *National Advertising Division (NAD)*, BBB National Programs, Inc., https://bbbprograms.org/programs/nad/ (last visited Sept. 23, 2019).
[5] *Id.*

environment, healthier and safer than all PTFE-type non-stick products";

- "[D]iscontinue its 'eco-friendly' claims" given "the lack of supporting evidence in the record . . .";

- "[D]iscontinue energy savings [claims] (as they were not consumer meaningful). . ."; and

- [D]iscontinue its 'natural,' 'mineral,' and 'mineral based' claims as the product in its final form has been chemically altered."[6]

33. GreenPan communicated to NAD that it would "take the NAD's recommendations into consideration in future advertising and will make such modifications as necessary to comply with the NAD's decision."[7]

34. GreenPan removed most of the verbiage NAD found to be troublesome and replaced it with technically different, yet equally misleading, advertising.

35. GreenPan's Product packaging still contains claims that its Products are PFOA-free.

**D.     GreenPan Advertising Today**

36. Today, GreenPan claims on its advertising accompanying its nonstick Products that its nonstick Products are "HEALTHY CERAMIC NON-STICK."[8]

37. While GreenPan's Products may assist GreenPan's consumers in preparing "healthy" (as well as non-healthy) meals, GreenPan's nonstick Products are not, in and of themselves, healthy, nor do they guarantee that the meals cooked in them will be "healthy."

38. On its website, GreenPan claims that "[u]nlike traditional nonstick cookware, our ceramic nonstick coating is made without the use of PFAs, PFOA, lead or cadmium and never releases toxic fumes when overheated."[9] As recognized by NAD, such statements are misleading because they convey the message that other non-stick coatings are made with PFOA, when in fact,

---

[6] *NAD Recommends GreenPan Modify, Discontinue Certain Eco-Friendly Claims for its Non-Stick Cookware*, BBB National Programs, Inc., http://www.asrcreviews.org/nad-recommends-greenpan-modify-discontinue-certain-eco-friendly-claims-for-its-non-stick-cookware/ (last visited Sept. 23, 2019).
[7] *Id.*
[8] GreenPan, https://www.greenpan.us/ (last visited Sept. 23, 2019).
[9] *Id.*

1    they are not.

2        39.    Implying that GreenPan's nonstick Products are superior because they do not contain

3    PFAS, PFOA, lead or cadmium misleads consumers to believe that competitor's cookware contains

4    PFAS, PFOA, lead or cadmium, when they do not.

5        40.    On its website and Product packaging, GreenPan further claims that its Products

6    contain "0% Toxins," and/or are "COMPLETELY TOXIN FREE!"[10]

7        41.    Despite its claims, upon information and belief, GreenPan's nonstick Products **do**

8    contain toxins.

9        42.    The U.S. patent for Thermolon states that "[a]n anion- and far infared ray-emitting,

10   inorganic ceramic coating agent for use in the present invention comprises in admixture the following

11   components: 40-50% wt % of an inorganic binding agent, which is silane such as formula RnSiX4-

12   n or an oligomer derived therefrom, as a binder . . . ." *See* United States Patent No. 7,727,637 (filed

13   June 1, 2010) [hereinafter the "Thermolon Patent"] at 4, attached hereto as Exhibit A.

14       43.    Silane is a toxin. *See Silane*, PubChem, https://pubchem.ncbi.nlm.nih.gov/

15   compound/Silane (last visited Sept. 23, 2019). Specifically, silane is "a colorless, flammable and

16   poisonous gas, with a strong repulsive odor. It is easily ignited in air, reacts with oxidizing agents, is

17   very toxic by inhalation, and is a strong irritant to skin, eyes and mucous membranes." *See id.*

18       44.    The U.S. patent for Thermolon states that the "structure has been produced by forming

19   an aluminum oxide (Al2O3) layer on the surface of an aluminum heat-cooker by anodic oxidation

20   and then applying thereon either an anion- and far infrared ray-emitting, inorganic ceramic coating

21   agent or a non-stick, inorganic ceramic coating agent . . . ." *See* Thermolon Patent at 4.

22       45.    Aluminum oxide is also a toxin. *See Hazardous Substance Fact Sheet*, NJ Department

23   of Health (Feb. 2017), available at https://www.nj.gov/health/eoh/rtkweb /documents/fs/2891.pdf;

24   *see also* Daniel Krewski, et al., *Human Health Risk Assessment for Aluminum, Aluminum Oxide, and*

25   *Aluminum Hydroxide*, NCBI, https://www.ncbi.nlm. nih.gov/pmc/articles/PMC2782734/ (last

26   visited Sept. 23, 2019). Aluminum oxide has been given a hazard rating of 2 out of 4 by the New

27

28   [10] *Id.*

Jersey Department of Health, and which noted on its "Hazardous Substance Fact Sheet" that "[r]epeated exposure can lead to lung damage."[11]

46.     The U.S. patent for Thermolon also states that another coating agent may be comprised of:

> an admixture [of] the following components: 65-83% wt % of an inorganic binding agent as a binder wherein said inorganic binding agent consists of 33-47 wt % of methyltrimethoxysilane, 17-23% wt % of tetraethoxysilane and 30-50 wt % of silica sol; 10-19% of a functional filler which prevents the crack of a film between said binding agent and said silicon mixture and controls the viscosity such that the physico-chemical properties of the film are improved; 1-2 wt % of pigment which produces color; and 2-15% wt % of an anion- and far infrared ray-emitting, ceramic powder.

Thermolon Patent at 5. Various other coating agents are proposed, with all variations containing an admixture of tetraethoxysilane, methyltrimethoxysilane, a "functional filler," and/or pigment. *See generally*, Thermolon Patent.

47.     Tetraethoxysilane is toxin. *See generally* Gelest, Tetraethoxysilane Safety Data Sheet, available at https://www.gelest.com/wp-content/uploads/SIT7110.1_TETRAETHOXY SILANE_GHS-US_English-US.pdf.

48.     Tetraethoxysilane "[c]auses serious eye irritation," "[m]ay be harmful if swallowed," "[m]ay cause respiratory irritation," and "[m]ay cause skin irritation." *See id* at 2.

49.     Methyltrimethoxysilane is a toxin. *See Methyltrimethoxysilane*, PubChem, https://pubchem.ncbi.nlm.nih.gov/compound/Methyltrimethoxysilane#   section=Consumer-Uses (last visited Sept. 23, 2019).

50.     Methyltrimethoxysilane can cause "specific target organ toxicity," in addition to "serious eye irritation," "respiratory irritation," and "skin irritation." *See id.*

51.     GreenPan's patent provides that the "functional filler" added to "prevent the crack of a film between the binding agents or to control the viscosity of the coating agent" shall be made of an "inorganic ceramic coating agent" such as "potassium titanate, alumina, and the like . . . ." Thermolon Patent at 5.

52.     Potassium titanate is a toxin. *See* Substance Information, European Chemicals

---

[11] *See Hazardous Substance Fact Sheet: Aluminum Oxide*, New Jersey Department of Health (Feb. 2017), available at https://www.nj.gov/health/eoh/rtkweb/documents/fs/2891.pdf.

Agency, https://echa.europa.eu/substance-information/-/substanceinfo/100.103.050#TRADE_
NAMEScontainer (last visited Sept. 23, 2019).

53. Specifically, potassium titanate "is suspected of causing cancer." *Id.* Potassium titanate is also "harmful if inhaled and may cause respiratory irritation." *Id.*

54. Upon information and belief, GreenPan updated or "enhanced" its ceramic coating and applied for a new patent for this ceramic coating in June of 2018. *See* United States Patent Application No. 20180170815 (filed June 21, 2018), attached hereto as Exhibit B. The application for the "enhanced" coating also contains the toxins mentioned above. *See id.*

55. Thus, GreenPan's nonstick Products are not, in fact, "COMPLETELY TOXIN FREE!" as advertised, but rather, contain several known toxins.

56. The Code of Federal Regulations directs that "[i]t is deceptive to misrepresent, directly or by implication, that a product, package, or service is non-toxic. Non-toxic claims should be clearly and prominently qualified to the extent necessary to avoid deception." 16 C.F.R. § 260.10(a).

57. GreenPan does not qualify its "nontoxic" claims in its Product packaging or website, but boldly claims that its Products are "COMPLETELY TOXIN FREE!" and have "0% Toxins."

58. GreenPan further advertises that its Products are "good for the environment." *Why Ceramic?,* GreenPan, https://www.greenpan.us/why-ceramic (last visited Sept. 23, 2019) ("Safe for your loved ones, good for the environment.").

59. Upon information and belief, GreenPan's support for its assertion that its Products are "good for the environment" is that GreenPan's Thermolon non-stick coating is "made from a sand derivative that does not require the use of toxic chemicals like PFOA or PFAS during the production process." *Id.*

60. Recognizing that environmental claims influence consumer purchases, The Federal Trade Commission issued "Green Guides" for businesses and marketers. The FTC's "Green Guides" direct that "[m]arketers should not make broad, unqualified general environmental benefit claims like 'green' or 'eco-friendly.' Broad claims are difficult to substantiate, if not impossible." *Environmental Claims: Summary of the Green Guides*, Federal Trade Commission at 1,

- 9 -

1    https://www.ftc.gov/system/files/documents/public_events/975753/ftc_-_environmental_ claims_s

2    ummary_of_the_green_guides.pdf (last visited Sept. 23, 2019).

3         61.     The FTC also directs: "Marketers should qualify general claims with specific

4    environmental benefits. Qualifications for any claims should be clear, prominent, and specific." *Id.*

5    The FTC adds that "[w]hen a marketer qualifies a general claim with a specific benefit, consumers

6    understand the benefit to be significant. As a result, marketers shouldn't highlight small or

7    unimportant benefits." *Id.* Further, "[i]f a qualified general claim conveys that a product has an

8    overall environmental benefit because of a special attribute, marketers should analyze the trade-offs

9    resulting from the attribute to prove the claim." *Id.*

10        62.     Here, GreenPan has violated each of the directives issued by the FTC by claiming

11    broadly that GreenPan Products are "good for the environment."

12        63.     Insofar as GreenPan has qualified this claim with a specific benefit, which Plaintiff

13    argues it has not, upon information and belief, the benefit of "not requir[ing] the use of toxic

14    chemicals like PFOA or PFAS during the production process" is a small and/or unimportant benefit

15    in light of the negative environmental effects GreenPan's Products create. For example, GreenPan's

16    Products are made of metal and do not, upon information and belief, biodegrade.

17        64.     Additionally, several consumer tests indicated that GreenPan's Products work as

18    nonstick cookware for a fraction of the amount of time that a standard pan lasts. *See The*

19    *Disappointing, Disappearing GreenPan*, San Diego Consumers Action Network (May 3, 2016),

20    https://www.sandiegocan.org/2016/05/03/the-disappointing-disappearing-greenpan/        ("Tests

21    conducted by America's Test Kitchen and Cooks Illustrated shows that most green pans did not

22    perform as well as the more traditional nonstick finish. And consumer sentiment has not been kind

23    towards the GreenPan . . . The Ceramic coated skillets works [sic] well initially, however the ceramic

24    coating begins to become a not so non stick coating after about 3 or 4 months.").

25        65.     Upon information and belief, this causes consumers to buy additional GreenPans, or

26    other pans, which similarly do not biodegrade.

27        66.     GreenPan advertises that its Products are "reinforced . . . with diamonds." *Why*

28    *GreenPan*, GreenPan, https://www.greenpan.us/WHY-GREENPAN (last visited Sept. 23, 2019).

- 10 -

67.     GreenPan advertises this reinforcement makes "[the Products] more advanced in performance, durability and resilience." *Id*.

68.     Upon information and belief, GreenPan's Products do not contain diamonds or diamond fragments.

69.     GreenPan's statements regarding diamond reinforced Products, when in fact such Products do not contain diamonds, misleads consumers to believe that GreenPan's Product is of a greater value than it actually is.

70.     Based on information and belief, GreenPan's consumers, including Plaintiff, purchased GreenPan's nonstick Products based largely on GreenPan's claims, including: "HEALTHY CERAMIC NON-STICK," "COMPLETELY TOXIN FREE," "good for the environment," "reinforced . . . with diamonds," and "No PFOA, PFAS, Lead or Cadmium."

71.     GreenPan's claims including "COMPLETELY TOXIN FREE," "HEALTHY CERAMIC NON-STICK," and/or "Good for the environment" were materially misleading to consumers, including Plaintiff.

**E.      Plaintiff's GreenPan Purchase**

72.     In 2017 Plaintiff Saldiver purchased her GreenPan Products from a Target store in Salinas, California.

73.     Prior to purchasing her GreenPan Products, Plaintiff researched GreenPan's Products online on GreenPan's website, and examined GreenPan's claims on its Product packaging, including GreenPan's claims that its Products were, and are, "HEALTHY CERAMIC NON-STICK," "COMPLETELY TOXIN FREE," "good for the environment," "reinforced . . . with diamonds," and contain "No PFOA, PFAS, Lead or Cadmium."

74.     Based on GreenPan's claims that its Products were, and are, "HEALTHY CERAMIC NON-STICK," "COMPLETELY TOXIN FREE," "good for the environment," "reinforced . . . with diamonds," and contain "No PFOA, PFAS, Lead or Cadmium." Plaintiff chose to purchase GreenPan Products over other comparable cookware.

75.     Plaintiff paid a premium price for her GreenPan Products at the time she purchased them. Had Plaintiff known that any of GreenPan's claims regarding its Products were false, Plaintiff

- 11 -

1
2

would not have purchased her GreenPan Products, or would have paid substantially less for the cookware.

3

## V.    CLASS ACTION ALLEGATIONS

4

76.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the

5
6

Federal Rules of Civil Procedure on behalf of herself and all others similarly situated on behalf of the following Class:

7

> All purchasers of GreenPan nonstick Products, purchased in California, within the four (4) years prior to the filing of this Complaint.

8
9
10

77.    This action has been brought, and may be properly maintained, under Federal Rule of Civil Procedure Rule 23.  The proposed Class and Class Representative satisfy the criteria of Rule 23 as outlined below.

11
12
13
14
15
16
17
18
19
20
21

78.    **Numerosity—Federal Rules of Civil Procedure 23(a)(1).**  Information regarding exact numbers of sales of GreenPan nonstick Products is not publicly available. However, GreenPan Products are sold nationwide in online and brick and mortar stores such as Amazon.com, WalMart, Target, Williams Sonoma, Sur La Table, and Bed Bath & Beyond. Based on information and belief, all of GreenPan's Products have been marketed as "HEALTHY CERAMIC NON-STICK," and/or "TOXIN FREE" and/or "good for the environment," and/or "PFOA, PFA, Lead [and] Cadmium" free and/or "reinforced . . . with diamonds." Based on the availability of GreenPan Products coupled with the high demand for nontoxic cookware, it is reasonable to calculate that Class members are so numerous and dispersed that joinder of all Class members is impossible. Although a precise number of Class members is unknown, based on information currently available, Plaintiff is informed and believes that the class members number in the millions.[12]

22
23
24

79.    **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact which predominate over any questions which may affect individual Class members, including, but not limited to:

25
26

a.    whether GreenPan's alleged misrepresentations would deceive a reasonable

27
28

---

[12] *Why GreenPan?,* GreenPan, https://www.greenpan.us/WHY-GREENPAN (last visited Sept. 23, 2019) ("Since 2007, millions of people across the globe have joined the ceramic non-stick revolution.").

CLASS ACTION COMPLAINT                    Case No:

1    consumer and is a frauduatent business practice violating California's Unfair

2    Competition Law, False Advertising Law, and Consumer Legal Remedies Act

3    ;

4    b.    whether GreenPan's alleged conduct constitutes a unfair business practice

5    violating California's Unfair Competition Law;

6    c.    whether GreenPan's alleged conduct constitutes a unlawful business practice

7    violating California's Unfair Competition Law;

8    d.    whether GreenPan's alleged conduct violates its design duties, warranty laws,

9    and other laws as set forth herein;

10    e.    whether GreenPan designed, manufactured, advertised, marketed, and

11    distributed for sale the nonstick Products at issue into the stream of commerce;

12    f.    whether GreenPan's alleged conduct was willful, or whether GreenPan

13    willfully mislead consumers;

14    g.    whether Class members are entitled to damages, restitution, restitutionary

15    disgorgement, equitable relief, statutory damages, exemplary damages, and/or

16    other relief; and

17    h.    the amount and nature of relief to be awarded to Plaintiff and Class members.

18    80.    **Typicality—Federal Rules of Civil Procedure 23(a)(3).**    Plaintiff's claims are

19    typical of the claims of Class members because Plaintiff and the Class members purchased GreenPan

20    nonstick Products containing the one or more of GreenPan's standard advertising phrases, including

21    claims that the Product was "HEALTHY CERAMIC NON-STICK," contained "No PFOA, PFAS,

22    Lead or Cadmium," was "COMPLETELY TOXIN FREE" as well as"good for the environment,"

23    and was "reinforced . . with diamonds." Had Plaintiff or Class members known the truth of the

24    Product they purchased, they either would not have purchased GreenPan's nonstick Products or

25    would have paid less for the nonstick Products they did purchase. As a result of GreenPan's

26    misleading and/or fraudulent conduct, Plaintiff and Class members have suffered monetary damages.

27    Plaintiff's claims are typical of the Class members' claims because Plaintiff's claims arise from the

28    same wrongful conduct that give rise to Class members' claims.

- 13 -

81.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).**  The above-named Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class it seeks to represent.  Plaintiff has retained counsel that are well-versed and experienced in complex litigation and class action litigation, and Plaintiff and counsel intend to vigorously prosecute this action on behalf of Plaintiff and the Class.  The interests of the Class will be fairly and adequately protected by Plaintiff and counsel.

82.    **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**  Injunctive and declaratory relief are appropriate because GreenPan has acted or refused to act on grounds which are generally applicable to Plaintiff and Class members.  Thus, final injunctive and declaratory relief, as described below, is appropriate with respect to the Class.

83.    **Superiority—Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this action; no unusual difficulties are likely to be encountered in the management and litigation of this class action.  When compared to the burden and expense required to litigate each Class member's claims, each individual Class member's claims are relatively small; thus, it would be impracticable for individual Class members to seek redress for GreenPan's wrongful conduct.  Even if individual Class members could afford individual suits, the court system could not. Furthermore, individualized litigation creates the potential for embarrassment and inconsistent judgments and increases the delay and expense to all parties and the court system. Adjudication of this matter by means of a class action ensures the most efficient and time- and cost-effective resolution by providing economy of scale, presents fewer management difficulties, and provides the benefit of a comprehensive supervision and a final adjudication by a single court.

84.    **Class Action Maintainable under Rule 23(b)(3).**  A class action is appropriate because common questions of law and fact predominate over any individual questions affecting only individual members. Class treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No

- 14 -

difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Without a class action, the Defendant will remain free from responsibility for misleading Plaintiff and Class members regarding the nature of its nonstick Products.

85.     **Class Action Maintainable Under Rule 23(b)(2).**  By placing into the marketplace its nonstick Products containing misleading labelling and advertising, and by continuing to manufacture, market, and sell its nonstick Products "HEALTHY CERAMIC NON-STICK," contained "No PFOA, PFAS, Lead or Cadmium," was "COMPLETELY TOXIN FREE" as well as "good for the environment," and was "reinforced . . with diamonds," the Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making declaratory relief an appropriate remedy for Plaintiff and the Class.

## VI.     CLASS CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS
### CODE § 17200, *ET SEQ.*

86.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

87.     Plaintiff brings this Count individually and on behalf of the other Class members.

88.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

89.     GreenPan has violated the "unfair" prong of the UCL by advertising its Products as "HEALTHY CERAMIC NON-STICK," "COMPLETELY TOXIN FREE," "good for the environment," "reinforced . . . with diamonds," and containing "No PFOA, PFAS, Lead or Cadmium."

90.     A business act or practice is "unfair" under the UCL if the reasons, justification and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

91.     GreenPan's reasons for advertising its Products as "HEALTHY CERAMIC NON-STICK," "COMPLETELY TOXIN FREE," "good for the environment," "reinforced . . . with

- 15 -

1   diamonds," and containing "No PFOA, PFAS, Lead or Cadmium" were purely monetary and

2   intended to exploit the health, safety, and environment-conscious consumer.

3       92.    The gravity of the harm to members of the Class resulting from these unfair acts and

4   practices outweighed any conceivable reasons, justifications, and/or motives of GreenPan for

5   engaging in such deceptive acts and practices. By committing the acts and practices alleged above,

6   GreenPan engaged in unfair business practices within the meaning of California Business &

7   Professions Code §§ 17200, *et seq*.

8       93.    Similarly, GreenPan has violated the "deceptive" and "misleading" prongs of the

9   UCL by advertising online and on Product packaging that its Products are "HEALTHY CERAMIC

10  NON-STICK," "COMPLETELY TOXIN FREE," "good for the environment," "reinforced . . . with

11  diamonds," and containing "No PFOA, PFAS, Lead or Cadmium."

12      94.    This advertising is "deceptive" and/or "misleading" because they would lead a

13  reasonable consumer to believe that Defendant's Products are healthy, toxin free, good for the

14  environment, and reinforced with diamonds, when these Products have none of these characteristics.

15      95.    Furthermore, GreenPan has violated the "unlawful" prong of the UCL.   The

16  California Civil Code §1770(a)(2), (5) and (7) prohibits mislabeling consumer products the as have

17  standard, quality, sponsorship, approval, and/or certification which they do not.  Defendant's actions

18  also violate California Business & Professions Code §§ 17500, *et seq*.

19      96.    Such advertisements caused Plaintiff, and members of the proposed Class, to

20  overvalue GreenPan's Products and to purchase GreenPan's Products at a higher price than they

21  otherwise would have paid for the Product. As a direct and proximate result of Defendant's

22  "unlawful" business practices as alleged herein, Plaintiff and each Class member have been

23  wrongfully deprived of money and/or property.  As such, Plaintiff requests that this Court cause

24  GreenPan to restore this money to Plaintiff and all Class members, and to enjoin GreenPan from

25  continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.

26  **COUNT II**
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW,**

27  **CALIFORNIA BUSINESS & PROFESSIONS CODE SECTIONS 17500, *ET SEQ*.**

28      97.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

- 16 -

98.    The California False Advertising Law prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to value.

99.    Defendant disseminated, or caused to be disseminated, the deceptive Product labeling and advertising alleged herein in violation of California Bus. & Prof. Code § 17500.

100.    Defendant's labeling and advertisements convey a series of express and implied claims which they know are material to the reasonable consumer and for which they intend for consumers to rely upon when choosing to purchase a cookware Product.

101.    Defendant's labeling and advertising was uniform and would be considered material to the average consumer.

102.    Plaintiff and members of the Class purchased Defendant's Products believing the Products were "HEALTHY CERAMIC NON-STICK," "COMPLETELY TOXIN FREE," "good for the environment," "reinforced . . . with diamonds," and containing "No PFOA, PFAS, Lead or Cadmium." However, these statements are false, misleading, and have deceived reasonable consumers like Plaintiff and members of the Class.

103.    Defendant's labeling and/or advertising of its Products as "healthy," "toxin free" and good for the environment" are misleading because: (1) meals cooked in its ceramic pans are no healthier than the same meal cooked in any other pan; (2) a product is not "healthy" in and of itself because it claims to not contain toxins; (3) the Products do, in fact, contain toxins despite claiming to be "toxin free" and made of "0% Toxins"; (4) the pans are not, on balance, good for the environment; (5) the Products are not reinforced with diamonds; and (6) the Products do not differ in a material way from other non-stick cookware by virtue of the fact that they do not contain PFOA, PFAs, lead or cadmium.

104.    GreenPan's practices of advertising its Products as "HEALTHY CERAMIC NON-STICK," "COMPLETELY TOXIN FREE," "good for the environment," "reinforced . . . with diamonds," and containing "No PFOA, PFAS, Lead or Cadmium" were unfair, deceptive and misleading advertising practices because they gave Plaintiff and the Class the false impression that GreenPan's Products were and are healthy, toxin free, good for the environment, made with diamonds, or are otherwise superior, when they are not.

- 17 -

105.   In making and disseminating the deceptive representations alleged herein, Defendant knew or should have known that the representations were misleading and acted in violation of California's Bus. & Prof Code §§ 17500, *et seq.*

106.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and California purchasers of Defendant's Products have suffered substantial monetary and non-monetary damage. Through its unfair acts and practices, GreenPan has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this Court cause GreenPan to restore this money to Plaintiff and all Class members, and to enjoin GreenPan from continuing to violate California's False Advertising Law as discussed herein and/or from violating California's False Advertising Law in the future.

## COUNT III
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE SECTIONS 1750,** *ET SEQ.*

107.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

108.   Defendant's Products are a "good" as defined by California Civil Code §1761(a).

109.   Defendant is a "person" as defined by California Civil Code §1761(c).

110.   Plaintiff and Class members are "consumers" within the meaning of California Civil Code §1761(d) because they purchased their GreenPan Products for personal, family or household use.

111.   The sale of Defendant's GreenPan Products to Plaintiff and the Class is "transaction" as defined by California Civil Code §1761(e).

112.   By failing to give notice to consumers regarding the true nature of the GreenPan Products, as alleged herein, Defendant violated California Civil Code §1770(a)(2), (5) and (7), as it misrepresented the standard, quality, sponsorship, approval, and/or certification of its Muscle Milk Products.

113.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and California purchasers of Defendant's Products have suffered substantial monetary and non-monetary damage. Through its unfair acts and practices, GreenPan has improperly obtained money

- 18 -

from Plaintiff and the Class.

114.   Plaintiff, on behalf of herself and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the state of California, seeks injunctive relief prohibiting Defendant continuing these unlawful practices pursuant to California Civil Code § 1782(a)(2).

115.   Plaintiff provided Defendant with notice of its alleged violations of the Consumer Legal Remedies Act ("CLRA") pursuant to California Civil Code § 1782(a) *via* certified mail, demanding that Defendant correct such violations.

116.   If Defendant's fail to respond to Plaintiff's CLRA notice within 30 days, Plaintiff may amend this Complaint to seek all available damages under the CLRA for all violations complained of herein, including, but not limited to, statutory damages, punitive damages, attorney's fees and cost and any other relief that the Court deems proper.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**

117.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

118.   Defendant's labeling and advertisements convey a series of express and implied claims which they know are material to the reasonable consumer and which they intend for consumers to rely upon when choosing to purchase the Product.

119.   Defendant's labeling and advertising was uniform and would be considered material to the average consumer.

120.   Plaintiff and members of the Class purchased Defendant's Products believing the Products were healthy, toxin free, good for the environment, reinforced with diamonds, or superior to other brands by virtue of being PFOA, PFA, cadmium, and lead free.

121.   Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased Defendant's Products.

122.   The terms of that contract include the promises and affirmations of fact made by

- 19 -

Defendant on its Product labels and in the marketing of Defendant's Products that falsely claim that Defendant's Products are "HEALTHY CERAMIC NON-STICK," "COMPLETELY TOXIN FREE," "good for the environment," "reinforced . . . with diamonds," and contain "No PFOA, PFAS, Lead or Cadmium."

123.   These promises and affirmations of fact constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

124.   Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by failing to provide a product with the promised benefits described above.

125.   As a result of Defendant's breach of its implied warranty, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## CLAIMS FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in her favor and against Defendant GreenPan as follows:

1.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

2.   For an order that Defendant disgorges and restores to Plaintiff and the Class all monies including but not limited to profits wrongfully obtained by Defendant as a result of Defendant's untrue, unfair, deceptive or misleading advertising or unlawful, unfair or fraudulent advertising as alleged herein, pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.*;

3.   For an order that Defendant disgorges and restores to Plaintiff and the Class all monies including but not limited to profits wrongfully obtained by Defendant as a result of Defendant's false advertising as alleged herein, pursuant to Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

CLASS ACTION COMPLAINT                    Case No:

4.    For an order that compensatory and putative damages, pursuant to Cal. Civ. Code §§ 1750 *et seq.*;

5.    Declaring that GreenPan breached its express warranty with Plaintiff and Class Members;

6.    Ordering GreenPan to pay pre- and post-judgment interest on any amounts awarded;

7.    Ordering GreenPan to pay attorneys' fees and related costs; and

8.    Ordering such relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  September 23, 2019            Respectfully submitted,

FINKELSTEIN & KRINSK LLP

By: /s/ Trenton R. Kashima
         Trenton R. Kashima

Jeffrey R. Krinsk
550 West C Street, Ste. 1760
San Diego, CA 92101
Telephone:  (619) 238-1333
Facsimile:   (619) 238-5425

Rod M. Johnston (Pro Hac Vice anticipated)
rjohnston@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

Timothy Becker (Pro Hac Vice anticipated)
Jennell K. Shannon (Pro Hac Vice anticipated)
Molly E. Nephew (Pro Hac Vice anticipated)
JOHNSON BECKER PLLC
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone:  (612) 436-1804
Facsimile:   (612) 436-4801
tbecker@johnsonbecker.com
jshannon@johnsonbecker.com
mnephew@johnsonbecker.com

*Counsel for Plaintiffs and the Class*

- 21 -